May it please the Court, my name is Avril Lerman. I'm here on behalf of habeas petitioner Melvin Edwin. I would like to reserve five minutes for rebuttal. Counsel, watch the clock, and when you get to about ten minutes, you'll know that you only have five minutes left. And then attorneys actually interrupt the Court to proceed? Oh, yes. Okay, so advised. I would like to focus my argument today on the issue of equitable tolling and the effect of Holland v. Florida. You're not going to pursue the statutory tolling argument then? I was planning to. Or submit that on the briefs? Yes, I'd like to submit that on the briefs unless the Court has questions. I think that the Holland v. Florida decision by the United States Supreme Court was a very important decision on equitable tolling. I would submit that it really stated what the law is as to equitable tolling in a different manner than any Supreme Court case had previously stated, and that the district court decision in this case was issued without the benefit of Holland v. Florida, that if the district court had had the benefit of Holland v. Florida, it would have decided both prongs of the equitable tolling test differently. Now, how did Holland change the law so far as it applied to this case? Well, you know, I was thinking about that very issue. I was thinking, could you argue it was a, you know, subsequent change in the law? The answer to that is I'm not entirely sure. What I can say is that if I were a district court judge deciding this case before Holland and deciding this case after Holland, I would have a very different roadmap of what I'm supposed to do and why. The legal standards in Holland were clearly enunciated for the first time the United States Supreme Court set explicitly in a decision that equitable tolling does apply in a habeas context. For the first time, the United States Supreme Court emphasized that the duty of reasonable, and in Holland, I think the most important thing in Holland is that there was a split in jurisdictions and different circuits. Until then, the court relied on Ninth Circuit authority as, of course, it should have. But one could not do that with the confidence that the Supreme Court was behind the Ninth Circuit until the Ninth Supreme Court said so. But the Ninth Circuit has recognized the doctrine of equitable tolling for some time. That's correct, Your Honor. Holland essentially gave Supreme Court imprimatur to what has been settled jurisprudence in this circuit for several years. And in every other circuit as well. But the issue as to the legal standards that should be applied to the prongs of diligence and egregious misconduct, the statement by the court as to diligence emphasizing that it's reasonable diligence only that's required, not maximum feasible diligence, that standard wasn't. But that was the standard of another circuit. Our reasonable diligence standard has been much more lenient. I understand that, but I think that the court treaded too lightly. And I think on that issue, in this case, partly because of the lack of Supreme Court authority and partly because there's a split in the districts and the circuits, and therefore there's a lack of confidence. Counsel, I guess I have the same concern Judge O'Scanlan does. How does Holland change the result here? The problem that your client has with regard to reasonable diligence is that we've got a gap, as I understand it, of at least three years, from August of 96 to October of 99, where there's virtually nothing happening in his case. And how does he even begin to establish reasonable diligence under the most lenient of standards? I'd like to address that. First of all... I'm inviting you to. Thank you. First of all, I would disagree that there is nothing in the record as to what happened between 1996 on the fact. I believe that the district court failed to conduct an adequate factual review of that very issue. And I cite to you excerpt page 142, which is the letter written by the Office of Public Advocacy attorney who was looking at the file in 2000 and who stated this to the Superior Court of Alaska. In the years following his conviction, Mr. Edwin repeatedly requested the filing of a post-conviction relief application. So this attorney represented to the state court that in the years following his conviction, that would be 1996, 1997, 1998, Mr. Edwin repeatedly requested the filing of a PCR. The OPA file was apparently misplaced. Mr. Traverso worked for OPA, and by 2000, Ms. Carney worked for OPA too. The court repeatedly relies throughout its... Can I ask you a factual question about that? Yes, sir. So where was the... I forget the name of the person who wrote that letter in 2000. Mr. Allen, David Allen. Where was he working? He was working at the Fairbanks Office of Public Advocacy, which Mr. Traverso had been employed. Right, but so if the file is missing... I believe Mr. Allen was looking at the file at the time he wrote that letter. So in 2000. Correct. And there's other evidence in the record, including the affidavits of Sue Carney, that suggest that the file existed and was available then, but subsequently was misplaced. I think the district court should have indulged a presumption, perhaps something related to spoliation of evidence, that when the very state agency that's charged with keeping the records of what happened between 1996 and 1999... Wait a second. The state agency is the State Appellate Defender's Office, right? What I mean is... Is that the file that's missing? The file that's missing is Mr. Edwin's post-conviction relief attorney's file from 1996 to 1999. So why should the state be charged under the spoliation rule and the adverse inference that applies for something that was in the custody of Mr. Edwin's attorney? Mr. Allen and Mr. Traverso, I'm not suggesting a literal application of the spoliation of evidence, but I suggest that the district court had a number of... The rules require that the district court make reasonable factual inferences in favor of the petitioner. And one of the reasonable factual inferences is that David Allen said that Mr. Edwin had repeatedly requested a post-conviction case between 1996 and the years following that. And were there declarations that you submitted to the district judge from counsel? The question is, did we submit declarations from Mr. Allen to... Well, you're... I'm a little bit confused here. It seems to me that Mr. Edwin has an affirmative obligation under AEDPA to come forward with evidence to show reasonable diligence that could either be in the form of declarations from those of his former attorneys who are still alive and available to supply them, or through perhaps testimony by Mr. Edwin. And I'm asking you, what did Mr. Edwin do in order to demonstrate his reasonable diligence? Mr. Edwin, first of all, as the district court pointed out, we did not explicitly request an evidentiary hearing on the issue of diligence. We relied on the fact that the state superior court had expressly found that Mr. Edwin was diligent in attempting to file a timely post-conviction case and the... But that diligence is a different question, is it not, from AEDPA diligence? It's a different legal standard. The legal standard, it may be somewhat different in the letter of the law, but I would submit to the court that the spirit was identical to the equitable tolling issue. Counsel, I'm not sure that's right. As I understand the exercise of diligence in Alaska practice, the state superior court has a substantial amount of discretion, does it not, in order to excuse noncompliance with deadlines? That's how I read that rule. Which rule? Maybe it's the precedent. I think that the Alaska court, like the habeas courts on the federal circuit, do exercise equitable power in deciding whether there's... And that's essentially what the superior court judge did. That's correct. Right. But the problem that I have in applying the AEDPA standard is our Supreme Court has not been quite so forgiving, I guess would be the word. Well, I understand the court's point, and I'm not saying that it's identical. What I'm saying is that a finding of diligence is a factual finding in addition to a legal finding. If it's the same standard, but if you concede that there's a difference, if the Alaska standard is far more discretionary or more equitable, whatever you want to call it, then it seems to me it's a little bit like trying to accord collateral estoppel effect to a determination that's made which is different in the other proceeding. I understand the court's point. And therefore, it wouldn't be a binding fact. I would agree there's a strong argument that it's not binding. On the other hand, I think Edwin's reliance on that before the district court was reasonable, and Edwin did identify in numerous places in his pleadings that if it wasn't enough, he'd like to have an evidentiary hearing. One of the things I'd like to tell the court is that a month after the amended habeas petition was filed, the state filed two different motions to dismiss, this one and another one. Our oppositions were briefed in a seriatim, and not everything that we said in one opposition was always inserted in the other opposition because both motions had been filed at the same time both oppositions were scheduled. But we did specifically request an evidentiary hearing in our opposition to the other motion. The state opposed that. Furthermore, in our objections to the initial R&R, we requested an evidentiary hearing. Counsel, I couldn't find your request for an evidentiary hearing. What page in the record is it? I show that there was a request for an evidentiary hearing on document 55 at page 5, note 6. It's not a motion for an evidentiary hearing. It's a statement. We repeatedly told the court that the OPA file was missing, that it had been misplaced, that we wanted it, that it was relevant to the issues. I would also submit we referenced an evidentiary hearing request in the other motion at document 30, pages 29 through 30. We mentioned an evidentiary hearing in the amended petition at page 3. We mentioned an evidentiary hearing. I guess I already told you that one. So although Edwin may not have preserved it in the best possible way, I think that the reasonable inference is based, the court repeatedly emphasized at this very early stage of the pleadings, after this man spent 15 years trying to get his case moved through the state court. Yes, I'm looking at page 21 of the report, the final report and recommendation after the objections. And there the magistrate judge, whose statement was adopted by the district court, talks about why Mr. Edwin was not diligent. It seems to me if you look through the report and recommendation, the standard that the magistrate judge, Judge Coffin, applied was very similar, if not identical to the standard applied by the Supreme Court in Holland. But here's my question. You have this letter that says that he repeatedly said that he wanted his habeas post-conviction. Excuse me, Your Honor. I was told I needed to interrupt the court, and I have two minutes and 30 seconds left on the clock. I still recommend that you answer the question. Here's my, I'm trying to figure out what would happen in an evidentiary hearing. If all you have is the letter that said that he repeatedly sought to have his post-conviction relief petition filed, that by itself may not be enough to carry the day in light of the analysis of the Supreme Court in Holland. Correct. So what would you present at an evidentiary hearing? If you don't have the letters and Edwin doesn't have them. I expect I could present at an evidentiary hearing if this court were to remand the case to the district court. Mr. Allen, who wrote the letter, was looking at the file as far as I know, and I believe he's still available. I could ask him to testify. Another attorney in that office named John Franish received a letter from Edwin in 1999 and wrote a lengthy letter to Edwin. I believe that letter summarized exactly what the proceedings had occurred between 1996 and 1999. I don't have a copy of that letter. Mr. Franish may have one somewhere, or he may well remember the letter he had to write saying why his agency did nothing for Mr. Edwin after being appointed. Furthermore, I believe that there are other contemporaneous memoranda and other things floating around that might well summarize the contents of the missing file. I think Mr. Edwin was, if you look at the history of what Mr. Edwin did, he was very active from the moment he was convicted until the moment the file was started by OPA. And then as soon as he's out of Nelson Traversa's clutches and has another lawyer, you see a continual course. Here's my question. I think that a reasonable factual inference, if you'll just forgive me for mentioning my sentence, is that during the missing period he was just as active as he was on both ends. But see, the standard that the magistrate judge applied in the report and recommendation seems to be identical to the standard in Holland. And so shouldn't all this have been placed in the record? In other words, allegations of fact that, if true, would merit relief and so therefore he'd be entitled to an evidentiary hearing? Why wasn't this all laid out before the court, that there was this letter that had been written? Why wasn't all this factual information? Well, David Allen's letter is in front of the court. But just that? Yes. But nothing else? And Mr. Edwin had made statements and affidavits contained in the record that he had repeatedly attempted to pursue his post-conviction relief. But I would, I'm sorry. But see, here's my question. Assuming he wrote once every six months to OPA saying, can I please file my papers, is that enough under Holland? Because he would have known that they haven't filed it and he could have filed it himself. Where in Holland, they were told that it was filed. And also the lawyer had the deadline wrong. That's a question. I don't know the exact answer to that. Let's assume for the purposes of argument that he wrote to Nelson Traverso or to OPA every two months identifying the number of days that had passed since the judgment was issued and repeating his request. Furthermore, I'd submit that the court is, that the district court did not use the same test as in Holland because really what the district court did, although it stated the language, ultimately what it did on both the egregious misconduct prongs and on the diligence prong is say, look, Mr. Traverso's conduct in this case was troubling. And then it summarized a little bit of his conduct but not most of it. And then it decided that nothing had actually physically prevented Mr. Edwin from filing a non-exhausted and premature federal habeas corpus petition before he had done anything in state court. And I believe that the district court's decision really rests on that premise and that premise goes beyond reasonable diligence and is actually a maximum feasible diligence standard. Although the other standards were mentioned, I don't believe they were applied. Thank you, counsel. A question. Judge O'Scanlan before she sits down. How do you square your position with the fact that your client's letters to Traverso throughout the period that he says he was sending them, his 2000 pro se application for state PCR relief and his 2003 counseled application all clearly indicate that even Edwin did not think that an application was filed? I understand what argument the court is referring to and the statements made by the district court. I would disagree with that. In terms of saying that Edwin didn't think he was filing a post-conviction relief application, first of all, Mr. Edwin is an Alaska native man from the village of Tanana, 100 miles west of Fairbanks. He has had no prior felony record. He's never dealt with anything. His use of language and his understanding of what these words mean is completely unclear. And the principle that you should not take the words of an uncounseled pro se applicant and apply them rigidly is one that should have been applied in this case and wasn't. Mr. Edwin, what he filled out on a court form, or rather what some inmate in the prison in Florence filled out for him, should not be dispositive as to what Mr. Edwin thought. Mr. Edwin knew that he asked the judge for a new trial and a lawyer to represent him and that he was complaining about ineffective assistance of counsel. He got a lawyer to represent him, and the lawyer abandoned him. The lawyer didn't follow any of Alaska state law. Thank you, counsel. Our questions have taken you three minutes over your 15 minutes, so your time is fully expired. Thank you. We'll hear from the state. Thank you, Your Honor. My name is Kenny Rosenstein. I represent Joseph Smith, the respondent in this case. I'd like to first turn to Judge Moskowitz's question of Ms. Lerman. In this case, Mr. Edwin's attempt to file his state post-conviction relief application is really not the issue. His diligence in doing that, the focus of equitable tolling is his diligence in pursuing habeas relief, and there was nothing standing in his way from filing an application for habeas corpus from the time he first, when his conviction became final. He did not do that, and that's the diligence that this court has to focus on in determining whether he is entitled to equitable tolling, and he was not diligent. And it also goes to another prong of the equitable tolling standard, and that is causation. There is nothing in the record to suggest that Mr. Edwin's lawyers and state proceedings stood in his way in any fashion from his filing his habeas petition. So he has failed to satisfy two of the prongs of equitable tolling, both causation and diligence. And so the court wouldn't even have to address the quality of Mr. Traverso's action or inaction on Mr. Edwin's behalf. I'm not sure I follow that. Did you say that again? Because Mr. Edwin was neither diligent nor were the actions of his state lawyers a cause, a direct cause of his failure to file his habeas petition, he loses his equitable tolling argument on those two grounds alone, and the court need not even address whether the quality of Mr. Traverso's actions or inaction. But doesn't the quality of Mr. Traverso's actions really deal with the question as to whether he was the cause for the failure to file? Failure to file, I would agree that Mr. Traverso is certainly the cause of the failure to file his state PCR application, but nothing stood in the way from his filing a federal habeas petition. Yeah, but the federal habeas petition would have been tossed out for failure to exhaust the effective assistance of counsel, right? That may be so, but that would have brought things to a head. In other words, if he had filed the habeas petition, been told that, oh, no, you've got to go back to state court and get this exhausted, there would have been lawyers involved in the federal habeas petition, and steps would have been taken to pave the way to satisfy the exhaustion requirement and thereby solidify his right to seek habeas review. But wasn't he waiting for Traverso to file the state habeas, and then after that that would have tolled the time on the statute, and then file the federal habeas after that? Mr. Schmidt would argue that Mr. Traverso was waiting for Mr. Edwin to respond to Mr. Traverso's questions that he needed answered before he could file the PCR application. And that question was posed to Mr. Well, Mr. Traverso described that question in his affidavit submitted in connection with the state PCR, I believe. It's in the excerpt. In his declaration? Yes. It's excerpt 399. So this was the answer to the question of tell me, Mr. Edwin, what is it that your lawyer did at the trial that was in effect? It was more specific than that. Mr. Traverso asked Mr. Edwin. The underlying issue is the claim that Mr. Edwin's rights were violated because he was forced to testify by writing responses to questions. Correct. And in essence, Traverso asked him, well, if you'd been able to talk, what would have been different? What would you have said differently? Exactly. And Mr. Edwin never responded to that. Now, Mr. Edwin asserts that he did respond in the two letters that he sent to Mr. Traverso, which are at excerpt 284 and 137. But those letters make only the abstract claim of his perceived need to give a more detailed explanation of what had happened in the crime. And that if the jury could have heard his voice, that perhaps it would have somehow made a difference in assessing his credibility. Of course, the jury convicted him of second-degree murder, not first-degree. That's exactly what I was going to say. If you read his written responses, which are excerpt 234 to 235, he says, he describes the offense and says that while he wasn't thinking straight and still a little drunk and dizzy, that's a quote, he armed himself, pursued the victim, and their son pushed his way into the bathroom where they had gone and accidentally pulled the trigger. Well, that's second-degree murder. And I think that it was Mr. Traverso's assessment that it was actually an advantage to Mr. Edwin, the manner in which he testified. He obviously got a substantial benefit because the jury acquitted him of first-degree murder, convicted him of second-degree murder. The only further relief he might have garnered from the proceeding was perhaps a manslaughter conviction. But being drunk, not thinking straight, arming yourself and pursuing your victim certainly doesn't sound like manslaughter to me. And part of this was recorded on the 911 tape from the phone, was it not? Correct. Which you run into the bathroom with a wireless phone. I think that's correct, Your Honor. I'm not certain. And the gun had to be pointed at her head because she was shot in the ear. Right. Below the ear. So Mr. Traverso is waiting for answers to his questions because otherwise he thinks that a PCR application is futile. And I want to diverge a little bit and address one of the allegations, one of the arguments in Mr. Edwin's brief. He asserts in his brief that Mr. Traverso violated Alaska law by failing to file the PCR application. I want to correct that. Under Alaska procedure, the obligation to the procedure that Mr. Edwin is referring to is when a lawyer has been appointed to represent a defendant after he files a PCR application. That's Alaska Criminal Rule 35.1. That's when the duty that is described in the case cited in Mr. Edwin's brief, Griffin v. State, that's when the duty to actually file an application is triggered. And the lawyer who believes an application would be frivolous can invoke a subprocedure for establishing it. Shouldn't Mr. Traverso have sent Edwin a letter saying, you know, I don't think you have a claim, I'm not going to file a post-conviction relief petition? Arguably, yes. We don't know what he said exactly. We know from Mr. Traverso's declaration that he said that he wrote to Mr. Edwin asking for these responses. And I think what you can imply from Mr. Traverso's description is that if he didn't get those answers, the post-conviction relief application would be futile and would not be filed. But shouldn't he tell his client that, that the deadline is coming up? Unless you give me this information, I'm not going to file the petition? Arguably, certainly. But I'm not sure that that itself rises to the level of egregious misconduct that would be required for equitable tolling. Because, as I say, Mr. Edwin was, there was no impediment, no physical impediment to Mr. Edwin's filing a habeas petition, which would have then, would have, I think you can draw from that, that had he done that, there would have been some greater attention paid to his situation. You're saying file a federal habeas petition. Yes. But there you still have the exhaustion. I understand that, Your Honor. But I'm not saying that he could have pursued that habeas petition. I'm saying that had he done that, there would have been more attention paid to his case and it would have operated to trigger later actions that would have prompted, you know, would have resulted in. But he would have had to file the federal habeas before the end of the year. Of course. One year. And then he would have to, I guess, ask for a stay and abeyance so he could go and exhaust. And then once it was exhausted, he'd have to immediately file his federal claim. Yes. But wouldn't he have been pretty much out of time on the state claim? He had a year to file the state claim. Correct. Right. So if he's waiting for Traverso to act and Traverso isn't acting and he writes him a letter and says, look, if you're not going to do it, I'm going to do it, and he's near the end of the year, and then he files his federal petition as to what you're saying, and then there's motion practice saying, failure to exhaust would have been procedural bar if he tries to exhaust now, and he makes a motion for stay and abeyance. The clock would have been beyond the one year for the state petition by then. Depending upon when. It could have been. I think that the both clocks are running concurrently. They are. Right. And I made an error in the brief about when the time, when the one-year statute begins. I assume that it began when the Alaska Court of Appeals affirmed his sentence, and it did not. It began 30 days after his conviction became final. But in any event, it was all of Traverso's action or inaction that was forgiven by Judge Savelle later on when he exercised his discretion or his equitable authority. Correct. To permit him to nonetheless file an untimely. Correct. PCR. Anything further, counsel? No, thank you. Thank you, counsel. The case just argued will be submitted for decision.
judges: Moskowitz, O'scannlain, Tallman